The next case is In Re Bath and Kitchens Fixtures, antitrust litigation. The next case is In Re Bath and Kitchens Fixtures, antitrust litigation. Mr. LaRocca, good afternoon. Thank you, Your Honor. Chief Judge Strickland, Judge Rendell, Judge Thompson, and Robert LaRocca, on behalf of all of the appellants. With me is Stephen Asher. I'd like to reserve two minutes, please. I think we've got a, some law professor might take this case as a law school exam and civil procedure. I'll make sure that they don't know any of the names. Well, I've been waiting for 30 years of my professional career as a plaintiff's attorney to say to a court that I'm representing a strict constructionist and you should apply the rule literally and not bend it or expand it. Now's my chance. We do have a sort of a somewhat curious role reversal here where the plaintiffs are asking for a literal interpretation of Rule 41 and it's the defendants who are saying expand the rule, don't interpret it literally. When you practice law long enough, that eventually happens. I think the procedure at one level is fairly straightforward. Judge McLaughlin granted a, without prejudice, a 12B6 motion saying that we stated a claim, but essentially we didn't have enough meat on the bones. We had to allege more facts to go forward. She gave us time to amend as Judge Alito's decision in Shane says she has to do under Third Circuit law, whether it's requested or not, and that procedural posture, the correct procedure is to allow, leave to amend. Within the time granted, we made the decision that we were going to voluntarily dismiss our case. And that operates as a dismissal without prejudice since we had not done it before. And the issue then when the defendants move for entry of judgment and to convert it to a dismissal with prejudice, which we opposed and Judge McLaughlin granted. I'd like to make five points briefly. The first is under this court's Mancey decision, Mancey said that when a motion to dismiss is pending, the plaintiff has the absolute right to file a motion for voluntary dismissal. This is the next logical step from Mancey. Two, in addition to the holding of Mancey, there's also the language of Mancey which adopts the bright line rule that courts and commentators have found in Rule 41A that unless an answer or a summary judgment motion is pending, has been filed, the plaintiff has an absolute right to withdraw the case voluntarily. Mancey says the rule of court, this rule affixes a bright line test to limit the right of dismissal. It says it was drafted, it simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion, it has. If the defendant has served neither, it has not. I'm quoting your honors from 817F2 at 1065. I don't think you would exactly have to overrule Mancey to affirm the order here, but you most certainly would have to retrench very significantly from that language of Mancey, and you would have to retrench very significantly from the bright line rule. The second point, and I think listening to the two arguments before me, particularly the first one, I think so much of your professional lives is dealing with convoluted rules that are ambiguous and hard to understand. Here you have one which the commentators really do say it's a bright line. You look at two factors. Is there an answer or a summary judgment motion pending? And in all other circumstances, you have a right to withdraw. Both sides agree that there's a third exception, which is after entry of final judgment. When there's a final dismissal in a case, obviously you can't voluntarily dismiss anymore. There's nothing left to dismiss. The action itself is gone. That's precisely right. It's not just a matter of a complaint not being. What about the so-called lapse of the Second Circuit in the 50s in Harvey Illumina? Your Honor, that case has been so discredited, even in the Second Circuit, that in a way it makes a certain amount of sense when a judge looks at a case on preliminary injunction, as you know, and Judge Thompson, you know, from being in the district court, you really delve into the merits of a case. You hear witnesses. You look at exhibits. And if a trial judge in that posture looks at a case and says, there's really no merit to this case, you can sort of see the logic of saying, well, why should a plaintiff be able to withdraw? But after the Second Circuit decided Harvey in 53, the unanimous view of the commentators in the courts in the Second Circuit in the Sharp case, the Thorn case, has been that you just can't do it. Harvey is wrong. Courts cannot be in the business of engrafting exceptions into the rules. You apply the rules the way they are. Counsel rely on those rules, as we did. And there's a reliance element in reading the way the rules have been interpreted and the way they're written on their face. Well, they gently, and I use that word because I think they did use that tone, admonish you for gaming the situation and said it's just unfair to allow you to do this under these circumstances. There was no gaming whatsoever. Within the time period that we had, which we were entitled to have under Shane, we made a decision that we wanted to withdraw, not proceed with the lawsuit at this time. There was no bad faith. We had, and I firmly believe, Mr. Asher believes, we had enough information to go ahead with an amended complaint that we felt would have passed muster. But we simply, in looking at all of the circumstances, what was happening with the EU investigation, what was possibly happening with the grand jury investigation here, we decided we were just going to withdraw our case at this time. Do you have to have any reason at all to withdraw? No. The cases are absolutely clear that no, there's no motive. I made it a point to cite some of these horrible cases where plaintiffs really had been, I think it's a case out of the Fifth Circuit, where the court felt it had been misled. It was in the middle of a three-day evidentiary hearing, and the court of appeals said, I think the language was, particularly you really want the plaintiffs, if there's any case where you want the plaintiffs to take its medicine, it's here, but our function is to apply the rules, not to improve on them. But I just, I mean, there really wasn't any bad faith about this at all. We had a time period. We operated in that time period. When the case was in an interlocutory position, we thought we could go forward with the case, but we decided not to. Okay. What happens, though? Let's assume that Judge McLaughlin had never written you both that letter, but she did write a letter, and she said, you know, I made a mistake. I didn't intend it to be that way. I intended to dismiss with prejudice. What is the legal effect of that? Your Honor, I read that letter differently than I think Your Honor does. I don't think the letter said, I intended to dismiss with prejudice. I think what she said is, I intended to say in my order, dismissal without prejudice. See, and that's a key distinction, because as Judge Rendell alluded to a minute ago, the main error here is that I think Judge McLaughlin, who's a very thoughtful scholarly judge, her opinion on the underlying motion, pointing out the deficiencies of our complaint, you know, is a model, and she looked at all of the authorities, but when she got to the order that's under appeal, there's no authority cited at all, and she makes this, I think, misapprehension that Judge Rendell referred to, of confusing dismissing an action with dismissing a complaint. The action was pending all of this time. The action had to be pending under Pirelli. It was only the complaint, that actual vehicle of the complaint that was dismissed without prejudice. Her original order of July 19th didn't say that. She said, I'm not dismissing the complaint at this time. Her letter said, I meant to say instead, I'm dismissing it. It would have been a dismissal without prejudice. It had to be a dismissal without prejudice under Shane. So what she was saying in that letter is, I made a mistake. I should have written a dismissal without prejudice, which is what she ultimately did write in January. We're taking her word. We're not trying to play gotcha here with the district court and say, oh, because she didn't write something in that initial order or she confused it with the letter. No. We're taking her at the position she ultimately ascribed to in January in the three-page order that's under appeal, where she says everybody should understand that that was a dismissal without prejudice. But that's what I'm saying. That's an interlocutory order. And in that posture, a plaintiff has the right to withdraw the suit under Rule 41. The strongest opinion we have, I think, in our favor is the Ninth Circuit case in Miller v. Redden, where it permits exactly that. In fact, Miller is a much harder case because the judge announced from the bench that it was dismissing it and decided to dismiss the case without prejudice, ordered the parties, this was after the argument, made his oral ruling and said, submit proposed findings of fact and conclusions of law. And four days later, the plaintiffs withdraw the suit. The district court said, no, you can't do that. That's a dismissal with prejudice. And the Ninth Circuit reversed and said, no, there's a bright-line rule. You can do it even in that circumstance. It's a much stronger, harder case, I submit, than what we've got here, where there was no dismissal with prejudice. I mean, the ultimate question of whether we could or couldn't have amended was undecided and still is undecided. They tried to distinguish Miller v. Redden by saying, well, there it was an oral ruling from the bench, whereas here she wrote a written opinion. I don't know if that strikes you as a logical distinction. It does not strike me as a logical distinction. So if we take her amended order, does Borelli kick in at that point? Well, Borelli, yes, Borelli and Shane both kick in. And Borelli particularly by saying the action was pending. Dismissing a complaint without prejudice does not withdraw the action. The action is staying there. And Rule 41 says you withdraw the action. That's what we did. And the action pended until we got through it. And in fact, Your Honor, there's a sort of a logical, if you think it through, there's a logical contradiction between the district court's opinion. Because her view was that once I dismiss without prejudice, nothing was there. There was nothing for the plaintiffs to dismiss anymore. Nothing. Nothing exists. It's almost a sort of metaphysical view, I think. But if that's correct, then how could the defendants file their motion for entry of judgment? There was nothing for her to act on. So you can't, in a sense, have it both ways. If everything had disappeared from the docket, there was no vehicle for her to entertain or grant their motions, it seems to me. And I think the correct answer is the one that Borelli supplies. There is a fundamental distinction between an action pending and you have a complaint dismissed without prejudice. The action still pens. Now, I think that they have, they're going to Mr. Baker, Mr. Baker said he wanted to provide some, he sent me Friday afternoon some supplemental authority. I think he was going to say, there are two cases in the Third Circuit that say when you stand on your complaint and say you don't want to amend, that even a dismissal without prejudice becomes final and appealable. I agree. You wrote one of those a couple, 20 years ago or so. Yes. If we had stood on our complaint at that point when she said, do you want to amend? No, Your Honor. We don't want to amend. We want to stand. We want to let the appeal period go by. We want to take this up for the Third Circuit and let them decide whether it's sufficient or not. That's appealable. That's fine. When we're standing on the complaint and whether the technical wording, I think this court, Your Honor, said, we look at the functionality of what's really going on here. That isn't the posture in which this case was at all. I was surprised that the My red light's out. Can I have one more minute? Sure thing. I was surprised that the defendants briefed on a number of points. The number of times that they said that Judge McLaughlin had dismissed the case with prejudice, they say it on page 8, 16, 21, and on page 1 they say there was a dismissal on the merits. It's not correct, and it's not what Judge McLaughlin said. She said in the order that's under appeal, she said I don't see how anybody could read this order, my original order, except that it was a dismissal without prejudice. The other point is that I was rereading their brief over the weekend in preparation for this, and I came to this puzzling citation to Professor Moore. Let's see if I can find it. They quote Professor Moore as saying that you can't voluntarily dismiss the case to avoid an adverse determination on the merits. And I said, that's odd. That flies in the face with the section of Professor Moore that I cited. And this is on page 22 of their brief. So I've got out the volume of Professor Moore, and they're citing the wrong rule. They're citing the companion rule, 4182, I believe it is, what happens after an answer or a motion for summary judgment has been filed, where you have to make a motion to the district court, you don't have the absolute unilateral right to withdraw, and a variety of factors are taken into consideration, but it's not the right, it's not the rule that's applicable here. Let's see, any questions? Mr. LaRocca, thank you very much. Mr. Baker. We'll give you some additional time if you need it. Thank you, Your Honor, and may it please the court. My name is Joseph Baker, and I'm appearing here today on behalf of all of the defendant's appellees in this appeal. The parties agree that following final judgment, a plaintiff is no longer entitled to voluntarily dismiss under Rule 41A11. I'm sorry, could you repeat that? The parties agree that following final judgment, a plaintiff is no longer entitled to final judgment. Final judgment. That's right. Ending the case. And we think that the way that Judge McLaughlin's July 19th order, granting the motions to dismiss would lead to amend should be viewed is as a final judgment dismissing the consolidated and amended complaint with prejudice with the sole condition that the plaintiffs would be able to resurrect their claim by filing an amended complaint within the time provided. Don't stray too far from this. We want to get you on tape here. But she did say, she made a statement, and she said, I'm not dismissing the complaint. She said, I am not dismissing with prejudice at this time. And if she did dismiss with prejudice at that time, when did she dismiss with prejudice? The effect of that order would be that when the time, if nothing else were to happen, when the time to amend would expire, that order would become final. And this is how she interpreted that order in her subsequent January 24th order. But the time to amend never did expire because it was extended. And before the deadline, they voluntarily dismissed. That's right. However, at the time that Judge McLaughlin entered that July 19th order, the requirements for final judgment had been met because there was a separate  Under Rule 54, a judgment is defined to include any order from which an appeal lies. An appeal lies from that July 19th order. All the plaintiffs have to do is stand on their complaint. The July 19th order was interlocutory, was it not? Because there was a dismissal without prejudice. We would say that it was a final order so long as plaintiffs had stood on their complaint. But it can't be a final order if it's without prejudice and there is still the time to file an amendment. The plaintiffs would have waived their right to amend their complaint by standing on their complaint and appealing. If you can give me a case that says that an order of dismissal without prejudice would leave to amend, it has to be final at the moment that it's entered. That's a final order. I can give you one case that has come out since the briefing in this case. It's called Frederick Govee Home Depot. The citation is 507F3188 from November 9th of 2007. And that's a case where there was a dismissal without prejudice and this court said a dismissal with leave to amend will be treated as a final order if the plaintiff has elected to stand upon the original complaint. But does that mean there has to be an election? In the cases that we've had here in the Third Circuit, we've had elections. Plaintiffs have said we elect to stand on the complaint. In the Bathoff case, which we cited at page 13 of our brief, for the proposition that a plaintiff stands on the complaint if it fails to amend during the time allowed, that case also holds that appellate jurisdiction lies under 28 U.S.C. 1291 from an appeal brought during the time to replead. The plaintiff appealed during that time. By the time the order came down, that time had, of course, since expired. All right. It became final in the interim. It became final in the interim. But we don't have that here. We have the time still running during which an amendment could be made, could be filed, and no statement by the plaintiff that they're going to stand on their complaint. Instead, they exercise the option to dismiss. But nevertheless, it is an order from which an appeal lies. The plaintiffs have the option of standing on their complaint and appealing on day one. Even if you wait until day 30 and the time expires, that original order is still the final judgment from which an appeal lies. It's just kicking in, taking effect on that 30th day. But it never did become final here because they never stood on the complaint, nor did the time expire. Is that correct? Tell me I'm wrong on that. I think it became final because it was an order from which an appeal lies. They don't have to take that appeal. That's like saying that an appeal did not lie because the plaintiffs did not file a notice of appeal. It's solely at the plaintiff's option to convert that order into an appealable, Converted into an appealable. There was no conversion into an appealable order here. An appeal would have done the trick. They simply could have filed an appeal. They could have filed an appeal from the July 19th order saying it was a dismissal without prejudice and we have a right to file an amended complaint, but we really don't like what the judge said in the order, so we're appealing it. Would we have jurisdiction over that? Yes, if they had immediately appealed. On July 20th, they file an appeal. It's without prejudice. We have a right to amend. We have 60 days to amend. We may exercise the right to amend, but in the meantime, we want to know whether this order was right or not. No, there would not be jurisdiction there. They would have to stand on their complaint. Well, here we don't have that extra ingredient. But by giving the plaintiffs the option of either standing on their complaint or not during this time period, the result there is untenable. The court has issued an otherwise final judgment, a decision on the merits, and then basically hands an option to the plaintiff saying, if you like this decision. Isn't that exactly what this rule does? It says unless a summary judgment or an answer has been filed, the plaintiff has that ability to say, you know what? I don't want to pursue this now. Rule 41 says that except that both parties here agree that following judgment, that no longer exists. And I should mention that we do not necessarily agree that you need a final judgment in order to pass that line. Manzy and Shane never apply, never kick in at all. All of these cases that we're talking about, all of them. There was a final order in July, and that's the end of it. That's right. That's right. And almost every case that the back and forth in the briefing covers has to do with a voluntary dismissal that occurred prior to a decision on the motion to dismiss. In one case, the voluntary dismissal occurred after a motion to dismiss decision had been vacated by the Court of Appeals. I believe the only case that's been cited by plaintiffs that's even close to this one, following the decision on a motion to dismiss, is the Toka Cha Kim case in the District of Hawaii. And in that case, it's not clear at all that the Court ever intended to eventually dismiss with prejudice. The original dismissal had been without prejudice. And what are we to say? I mean, the language that's been cited here, the court will not dismiss with prejudice at this time as the defendant's request. The court will not dismiss. The meaning of that phrase is that the court will grant leave to amend for 30 days. One opinion of the Third Circuit, the other one that we provided to opposing counsel on Friday that might be helpful in looking at this is the Shapiro case from 1992. Shapiro v. UJB Financial Corp., 964 F. 2nd 272. In that case, the district judge told the plaintiff that it would have 30 days to amend, and if it failed to do so, it would entertain a renewed motion to dismiss. So that's even further away from what Judge McLaughlin did here. The time expired, and then there was an appeal, and this court held that there was appellate jurisdiction, even though the district court had never gone through that second step and actually dismissed. But the meaning of that first order was so clearly, if you do not amend your complaint, you will be dismissed with prejudice, that the actual mechanism of the order, the language of the order was not important. What was happening was clear. Well, that's contradictory. I mean, she says the motions that are dismissed are granted to the extent and so forth, but then the court will not dismiss the amended complaint at this time and will allow 30 days. And that's certainly what was happening in Shapiro. The court had said, we will consider. But there was no motion to dismiss the case filed by the plaintiffs in Shapiro. But there was appellate jurisdiction from that first order. That first order was a final order from which an appeal lied. Well, because nothing had been done in that intervening time period to change the status of that. Yes, but our view is that in this case, there is no intervening time period because when that first order is entered, that is the final judgment. That is the order from which an appeal lies. And this rule that plaintiffs proposed would really make it untenable for the procedure suggested by the Court of Appeals in Borrelli to ever really be implemented with effect by district courts. Because every time a district court grants a motion to dismiss with leave to amend, the plaintiffs would have the option of nullifying that decision. Many of these decisions are after extensive briefing, as in this case. Great consumption of judicial resources or the party's resources, careful consideration by the district court. That opinion, when first issued, would be subject to being voided by the plaintiffs if it was adverse. I don't understand what you mean by the nullification. I mean, if there was a complaint and it pled certain facts, and the district court says, you know, you really don't have enough here, I'll grant you leave to amend. And if the plaintiffs decide, you know, we might have some more facts, but then again, she said we really don't have enough facts. We don't want to run afoul of Rule 11 or anything else. We think we have enough, but let's dismiss the action, make sure we have enough facts, and come back in and file a new action. Has it nullified the first action? Hasn't the first order educated the plaintiffs as to what they need and where it's deficient? Doesn't Rule 41 really give the plaintiff the option to change their mind at some point? That's true that the order still had its effect as to that original complaint. So how is it nullified? It's nullified, arguably nullified, any res judicata effect of that decision. I think the obvious concern would be perhaps forum shopping, where, you know, the parties come into one forum and get a decision they don't like, or they can now go into a state forum or into a different district. But that's what Rule 41 says they can do, and Congress hasn't changed it. Rule 41 doesn't say they can do that after a decision. After judgment on the merits has been issued. I think we have a disagreement as to whether there's been a judgment on the merits here. It certainly says you can't do it after a summary judgment motion or an answer has been filed. So you could foreclose it easily by filing a summary judgment motion. That's another interesting way to look at this, actually, is this time period between the July 19th order and the expiration of leave to amend. It really is a sort of unfair balance if the plaintiffs are the ones who have the sole option to either take this decision or leave it. During that time period, we don't think that we could have answered the complaint. The complaint had been dismissed. As Judge McLaughlin said in her order, there was nothing left to voluntarily dismiss. There was also nothing left for us to answer. Should we have the day after her decision, should we have filed a motion for summary judgment? Because that way we can stop them from voluntarily dismissing. What's that motion directed to? It doesn't make any sense. It really has to be that if we want to be fair to the parties and give effect to the district court's carefully considered order, we have to say that after that first order granting leave to amend is issued, that's when the voluntary dismissal right gets cut off. I'd like to just quote a little bit of language out of the Shapiro case from 1992, talking about finality and this instance where there was no actual order of dismissal but appellate jurisdiction was found. This is citing the Supreme Court in culling the Beneficial Industrial Loan Corp. Ben Judge-Sherika wrote, we employ a practical rather than a technical construction of Section 1291's finality requirement. We think that practically speaking, at this point in time, on July 19, 2006, that was a final order that was appealable simply at the option of plaintiffs and based on that practicality rationale, that should be held to foreclose the right to voluntarily dismiss. Another case, Fulton v. Davis from the United States Supreme Court, cited in our brief at pages 2 and 24, it is entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of mere technicalities. We think that by voluntarily dismissing here, the plaintiffs are seeking to eliminate the effect of an adverse decision that had already been rendered. So your position is that once a trial court grants a motion to dismiss without prejudice, and in our circuit they have to be given a chance to make at least one amendment, that there are simply no circumstances under which a plaintiff could file a Rule 41A motion successfully? That's right. In many cases, if a dismissal order were simply without prejudice, case closed, not with a leave to amend like this, but an outright without prejudice, it would probably have the same effect as the voluntary dismissal anyway. The problem here is this hybrid where it's incipient with prejudice dismissal, but there's some time there for the plaintiffs to either provide another complaint that's viable or not. And in that case, the original decision on the merits can be simply avoided if the plaintiffs are allowed to voluntarily dismiss. There's no such thing as a dismissal with prejudice with leave to amend. There just isn't. Because dismissal with prejudice means dismissed. If prejudice attaches, you can't leave again. I think we need to recognize that this is a hybrid type of dismissal here, this leave to amend. Generally, there's a dismissal with prejudice or a dismissal without prejudice. Without prejudice, maybe the wrong party was named or there's a jurisdictional question or some technicality. And this is limited leave to amend. It's not dismissal without prejudice forever. It's dismissal with a limited opportunity to replead. But if the time for the repleading had not expired before they filed, I mean, if the time for repleading expired the day before they filed their 41 notice, that would be one thing. But it was still extant when they filed their 41 notice, wasn't it? The deadline for repleading was after that. That's right. That's right. And, you know, the other way of looking at it is they could have voluntarily dismissed on July 18, 2006. They could have shown up at oral argument. They could have looked at our motion and saw that we had a point. They could have shown up at oral argument and seen that the judge was asking them, do you have any more facts? Can't you help me out here? They could have read the writing on the wall and voluntarily dismissed right up until that order. But when she's, you know, written that memorandum, 20 pages, carefully reasoned. Why does that matter, the 20 pages carefully reasoned? Well, the plaintiffs have invoked, you know, the power of the court, the time and the resources of the court, in addition to the time and resources of defendants. And the court has issued a decision that the plaintiffs are seeking to strip of rest judicata effect. The court has done its work and has issued a decision. And the plaintiffs are saying, no, we will choose not to take that. And under everything that's gone before, a nullity. That seems like a concern to me. And it certainly seems unfair to the defendants in that instance. Is your plea to the rules makers on something like this? Or is it to the court to interpret the plain language of the rule different from what it appears to say? I don't think that our plea really concerns Rule 41 as much as it concerns the question of, you know, what is a final judgment that has to be respected? Certainly we do quarrel with Rule 41 at the margins. And we think that a lot of these cases, you know, it should be something that's revisited. But I don't think that we're even in that category of problems. I think that the question here is whether this was a final appealable order. And we think that because, you know, on July 20th, the plaintiffs could have appealed simply by standing on their complaint. That order has to be respected. They could have appealed. But it was in, as you say, it was in a limbo area until the time for repleting had expired. But it was from day one in order from which an appeal lies. That's true. And indeed, in the Batoff case, the plaintiff there appealed prior to the expiration of that time. Good. Anything, any further questions? No. Mr. Baker, thank you very much. Good. Mr. Baraka. The panel clearly understands this case very well. So unless you have questions, I'm going to waive it. Well, I guess in terms, you know, in terms of policy that Mr. Baker is arguing, he's going to say, well, if you get an order dismissing without prejudice with leave to replete, you know, what's to stop you from running to state court or some other venue? And I guess the answer is there's nothing. I mean, the plaintiff can choose his or her forum, whatever. In this case, it was a federal question. No, I think it is the policy that has been for 70 years, as long as Rule 41 has been. And it works that way around, too. Sometimes cases are dismissed in the state court system and come into federal court the second time around, and then they have to decide sort of the counterpart. Was it, you know, was it voluntarily withdrawn properly? But, you know, we have that. Anytime we're going to have this dual federal and state system, you're going to have that question. But I think it is the line that the policymakers have drawn, and I think your question, Chief Judge, is the right one. I think if everybody in this room were to start afresh, we might draw that bright line at some different point. But the argument that they have really is addressed to the drafters of Rule 41. As Wright and Miller say, the rule has been amended five times in the last 70 years, and they've never chosen to enlarge the category of motions. He said it's unfair because they couldn't have filed a summary judgment motion. They could have taken a very simple expedient of answering the complaint and moving for judgment on the pleadings under 12C. They would have had an answer to the complaint filed. Now, you can say logically, well, okay, doesn't that cut against you, Mr. LaRocca, because it's sort of, it would have been the functional equivalent. But it's the way the rule is written, and it's the way the bar relies on the rule, and I think that's the important, one of the important points here, that judges can't sort of, after the fact, carve out exceptions and start making exceptions to the rules, or else it gets very murky and confusing, and you don't know what to rely on. And that, at the end of the day, is the real problem with that 1953 Harvey Aluminum case, is that, you know, how bad does the summary, does the preliminary injunction finding have to be? Does it have to be, well, there's no chance of any possible probability of success, or is it, well, you have a, you know, a micro-centimeter of chance of success, and that's why the Second Circuit has run away from Harvey Aluminum, because you don't, once you start down that slippery slope, you don't have any guidance. But, on the other hand, the appellees, not really challenging Rule 41, they're just saying it was final on July 19th, and so the case was over. Judge Rendell, I think if that's their position, then you clearly have to reverse, because there's no question that this order was interlocutory on July 19th. Morelli holds it was interlocutory. Shane holds it was interlocutory. We cited in our brief dozens of cases, not dozens, but the case, collecting the cases, there's a case that collects all the cases around the country that say it's interlocutory. The two cases they have now, Shapiro, I reread Shapiro over the weekend after they cited it to me, it's clearly a case you say, I'm going to stand on the complaint, I'm letting the time for appeal lapse, I'm going up to the Third Circuit, I want to present my original complaint to them. I'm standing or falling on that original complaint and the allegations. I say they're sufficient. There's a world of difference between that and what happened here. The case was extremely well argued by both sides. We thank counsel for his excellent briefs and excellent argument. We will take the matter under advisement.